UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETZILLA, INC., | No. C-14-1354 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO TAKE JURISDICTIONAL DISCOVERY** |
| ANSER INNOVATION LLC, | |
| Defendant. | **(Docket No. 17)** |

_____/

Plaintiff Petzilla, Inc. has filed suit against Defendant Anser Innovation, Inc., seeking a declaration that Petzilla does not infringe Anser's '152 patent and that the '152 patent is invalid. Anser filed a motion to dismiss for lack of personal jurisdiction on May 17, 2014. This Court deferred the briefing schedule and hearing date on the motion to dismiss in order to resolve first Petzilla's motion for leave to take jurisdictional discovery.

Having considered the parties' briefs and accompanying submissions, the Court finds Petzilla's motion suitable for disposition without oral argument. The hearing on Petzilla's motion is **VACATED**. The motion for leave to take jurisdictional discovery is **GRANTED** in part and **DENIED** in part.

## I.   DISCUSSION

A.   Legal Standard

A district court has discretion in deciding whether to permit or deny jurisdictional discovery. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). "'Discovery may appropriately be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a

more satisfactory showing of the facts is necessary.'" *Id.* However, "'[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, [a] [c]ourt need not permit even limited discovery.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006); *see also Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) (stating that a district court does not abuse its discretion in denying jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction").

B.   <u>Scope of Discovery</u>

Here, Anser makes a passing argument that Petzilla is not entitled to any discovery because Petzilla has simply made bare allegations in the face of specific denials by Anser. *See* Opp'n at 9.

The Court does not agree. For example, Anser claims (through the declaration of its CEO) that, before the date this lawsuit was filed (in March 2014), it had not entered into any contracts or license agreements with any California companies (other than establishing an Internet Merchant Account with PayPal) and did not have any distribution or retail agreements. *See* Docket No. 14-5 (Lavin Decl. ¶¶ 8, 11, 13). Anser also maintains that PetChatz was not available in stores in March 2014 and that the launch of the product has been pushed back, "likely until June or July 2014." Docket No. 14-5 (Lavin Decl. ¶ 16).

But Petzilla has proffered evidence that, in August 2013, Anser publicly stated (as reflected on its petchatz.com website) that "[PetChatz] will be available nationally in specialty pet stores and other retailers in First Quarter 2014." Docket No. 12-1 (FAC, Ex. A). Furthermore, Petzilla has pointed to a public statement made by Anser's CEO, during a television interview in December 2013, that PetChatz would be coming out "early next year" and "will be available both online at PetChatz.com as well as in retail pet stores, nationally." FAC ¶ 12.

Information about Anser's relationships with distributors and retailers has relevance to specific jurisdiction.[1] As Petzilla points out, the Federal Circuit has indicated that, in a patent

---

[1] To the extent Petzilla suggests that there could be general jurisdiction based on the volume of sales (or pre-orders) made by Anser, the Court is not convinced, particularly in light of the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). *See, e.g.*, *id.* at 761-62 (stating that "neither Daimler [nor its subsidiary] is incorporated in California, nor does either entity

2

declaratory judgment action, cease-and-desist letters alone are not enough to establish specific jurisdiction but, where there is additional activity, there can be – *e.g.*, where "the patentee . . . 'contracted with [an exclusive distributor] to sell [the] patented products [in the forum State] [and] the agreement was 'analogous to a grant of a patent license.'" *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1019 (Fed. Cir. 2009) (quoting *Genetic Implant Sys. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)).

Accordingly, the Court concludes that some jurisdictional discovery is warranted. The Court, however, does not agree with Petzilla that the discovery it proposes is "narrowly tailored." Mot. at 7. Petzilla is asking for leave to take the following discovery:

- 29 document requests on Anser;
- 7 interrogatories on Anser;
- a 30(b)(6) deposition of Anser;
- a deposition of Anser's CEO (who submitted a declaration in support of Anser's motion to dismiss); and
- 5 third-party subpoenas.

The sheer amount of discovery establishes alone that Petzilla's desired discovery is not narrowly tailored. Moreover, a review of the discovery demonstrates that Petzilla is seeking information not related to or at best with only a remote connection to Anser's relationships with distributors and retailers.

The discovery is also problematic on other grounds. For example, Petzilla has failed to explain why it is necessary for it to take both a 30(b)(6) deposition and the deposition of Anser's CEO.[2] Petzilla has also failed to explain why interrogatories are necessary if a deposition were to be allowed. In addition, Petzilla has failed to explain why the third-party discovery is necessary.

---

have its principal place of business there[;] [i]f Daimler's California activities suffices to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which [the subsidiary's] sales are sizable").

[2] And for the 30(b)(6) deposition, Petzilla has failed to identify any specific topics, simply making reference generically to "jurisdictional discovery." *See* Docket No. 17-5 (Gikkas Decl., Ex. D).

Discovery of the Kroll Family Trust for example seems entirely unnecessary given that the Trust simply appears to have assigned the patent at issue to Anser. Also, Petzilla seeks to take discovery from two major distributors/retailers (PetCo Animal Supplies and Pet Food Express) when information about any relationship with Answer is (more than likely) equally obtainable from Anser itself.

The Court therefore rules as follows: Petzilla may take one 30(b)(6) deposition (or alternatively, the deposition of Anser's CEO) and propound focused document requests on Anser. The discovery shall be limited to Anser's relationships with distributors and retailers – in particular, whether Anser contracted with an exclusive distributor or retailer to sell the patented product in California and the agreement was analogous to an exclusive patent license. *See also Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008) (stating that "[e]xamples of these 'other activities' [related to the enforcement or defense of the validity of the relevant patents] include initiating judicial or extrajudicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum"). No interrogatories, other depositions, or third-party discovery is permitted.

The parties should meet and confer to discuss a deadline for the jurisdictional discovery to be completed and a briefing schedule on Anser's motion to dismiss.

This order disposes of Docket No. 17.

IT IS SO ORDERED.

Dated: May 20, 2014

_____
EDWARD M. CHEN
United States District Judge