NICOLAS S. GIKKAS (SBN 189452)
THE GIKKAS LAW FIRM
530 Lytton Avenue
2nd Floor
Palo Alto, California 94301
Phone: (650) 617-3419
Facsimile: (650) 618-2600
Email: nsg@gikkaslaw.com

KIEUN SUNG-IKEGAMI (SBN 211762)
JON IKEGAMI (SBN 211766)
INNOVATION COUNSEL LLP
2880 Lakeside Drive
Suite 200
Santa Clara, California 95054
Phone: (408) 331-1670
Facsimile: (408) 638-0326
Email: jsung@innovationcounsel.com
jikegami@innovationcounsel.com

Attorneys for Plaintiff
PETZILLA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

PETZILLA, INC. a Delaware corporation, d/b/a Petzila,

Plaintiff,

v.

ANSER INNOVATION LLC, a Minnesota limited liability company,

Defendant.

Case No. 14-cv-01354 EMC

**MOTION FOR LEAVE TO FILE MOTION FOR RECONSDERATION OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY (Dkt. No. 17)**

Date: TBD
Time: 1:30 p.m.
Courtroom: 5, 17th Floor
Judge: Hon. Edward M. Chen

**<u>REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED</u>**

**MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**

TO ALL PARTIES AND THEIR COUNSEL:

PLEASE TAKE NOTICE that before the Honorable Edward M. Chen of the United States District Court, 450 Golden Gate Avenue, San Francisco, CA 94102 in Courtroom 5, 17th Floor, Plaintiff Petzilla, Inc. ("Petzila") hereby moves the Court pursuant to Local Rule 7-9(b)(1) for an order granting leave to file a Motion for Reconsideration of Plaintiff's Motion for Expedited Discovery. Dkt. No. 17.

This Motion is based upon the Memorandum of Points and Authorities herein, the accompanying Declaration of Nicolas S. Gikkas In Support of Motion for Leave ("Gikkas Decl.") and exhibits thereto, and any other evidence that may be presented at or before the hearing on this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

On April 11, 2014, Petzila filed its First Amended Complaint for Declaratory Judgment of Patent Noninfringement and Invalidity ("FAC"). Dkt. No. 12. On April 17, 2014, Anser Innovation LLC ("Anser" or "Defendant") responded to the FAC with a motion to dismiss for lack of personal jurisdiction (Dkt. No. 14), supported by a declaration from Defendant's CEO, Ms. Lisa Lavin. ("Lavin Decl."). Dkt. No. 14-5.[1] On April 22, 2014, Petzila filed a motion seeking, among other things, expedited discovery to answer Defendant's Motion to Dismiss. Dkt. No. 17.

Anser opposed Petzila's motion (Dkt. Nos. 19 & 21), citing specific denials from the declaration supplied by the Lavin Declaration as the basis why the Court lacks personal specific jurisdiction and should deny discovery, including: Anser had not directed any advertising specifically toward California residents or companies (Lavin Decl., ¶ 11), had received pre-orders only on its website from California residents but made no "sales" in California (*id.*, ¶¶ 8, 15), had no contracts or license agreements with any California companies other than PayPal (*id.*, ¶ 11), did

[1] After the Court granted limited discovery, the Clerk noticed that Defendant's motion to dismiss was terminated on June 16, 2014. Dkt. No. 31. Anser's motion to dismiss was refiled on July 21, 2014, and relies on the Lavin Decl. filed earlier (Dkt. No. 14-5) for support. Dkt. No. 34.

not have any distribution or retail agreements (*id.*, ¶ 13) and had no retail agreements by March 2014 (*id.*, ¶ 16), did not provide a third party with a license to U.S. Pat. No. 7,878,152 ("the '152 patent") (*id.*, ¶ 13), did not provide not provide exclusive rights to distribute or sell the PetChatz product (*id.*, ¶ 13), that its agreement with Tuffy's Pet Foods, Inc. ("Tuffy's") was merely a non-exclusive commercialization agreement (*id.*, ¶ 14), and that Tuffy's did not receive any revenue from Anser's sale of the PetChatz device (*id.*, ¶ 14). The Lavin Declaration did not attach any documents in support of these specific denials.

Lacking any discovery, Petzila was not able to contest these statements. On May 20, 2014, the Court granted limited discovery as to only one aspect of specific jurisdiction:

> [O]ne 30(b)(6) deposition (or alternatively, the deposition of Anser's CEO) … and focused document requests … limited to Anser's relationship with distributors and retailers – in particular, whether Anser contracted with an exclusive distributor or retailer to sell the patented product in California and the agreement was analogous to an exclusive patent license…. No interrogatories, other depositions, or third-party discovery is permitted.

(Dkt. No. 28, at 4 (internal citation omitted).) The Court's decision was based at least in part on the Federal Circuit's decision in *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F3d 1012, 1019 (Fed. Cir. 2009), which held that the existence of a cease-and-desist letter together with the plaintiff contracting with an exclusive distributor to sell the patented product in the forum State analogous to a grant of a patent license can be sufficient to grant personal [specific] jurisdiction. (Dkt. No. 28, at 2-3.) However, the Court denied further jurisdictional discovery outside of the narrow parameters set forth above. Petzila respectfully requests that the Court allow briefing to show the Court why reconsideration of its Order is needed.

Following the Court's Order, Petzila propounded document requests substantively limited to Anser's distribution and retail agreements. Gikkas Decl., ¶ 2, Exh. A (document requests), and ¶ 3, Exh. B (notice of deposition). In response Anser produced 292 pages of documents on June 24, 2014 (Gikkas Decl., ¶ 4), and following two letters from Petzilla noting deficiencies in Anser's production (Gikkas Decl., ¶ 5, Exh. C (July 1, 2014); ¶ 7, Exh. D (July 9, 2014)), Anser produced an additional 153 pages and then 25 more pages. Gikkas Decl., ¶¶ 6, 8. As explained below,

Anser's three productions demonstrate that a number of specific denials made by Anser's CEO and repeated in Anser's pleadings were factually incorrect and misleading, in a manner that could not have been known to Petzila at the time of its Motion for Expedited Discovery. Anser has also resisted providing discovery requested by the document requests and within the scope of the Court's May 20, 2014 Order, which Petzila would detail in its Motion for Reconsideration such that an Order granting reconsideration could obviate the need for a separate motion to compel on the reconsidered motion.

## II. ARGUMENT

### A. Standard for Granting Reconsideration of an Interlocutory Discovery Order

Reconsideration of a discovery order is appropriate where the moving party "specifically show[s] reasonable diligence in bringing the motion" and:

> That at the time of the motion for leave, a material difference in fact … exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact … at the time of the interlocutory order

Local Rule 7-9(b)(1).

### B. A Material Difference in Facts Exists From That Which Defendant Presented To the Court Before Entry of the May 20, 2014 Discovery Order.

#### 1. The Facts Presented to the Court by the Parties Prior to the May 20, 2014 Order.

Having considered the facts presented by the parties, including the specific denials from Anser's CEO noted above, on May 20, 2014 the Court cited Plaintiff's evidence that Anser and its CEO had made public statements that its products would soon be available in stores, retailers and online nationally against Anser's specific denials that "it had not entered into any contracts or license agreements with any California companies," "did not have any distribution or retail agreement," the product "was not available in stores," and "launch of the products had been pushed back…." Dkt. 28, at 2. The Court permitted limited discovery where the allegations and specific denial conflicted – namely whether in preparing to launch Anser had established a distribution or

retail relationship analogous to an exclusive patent license. *Id.* at 4. The Court did not permit discovery into other areas that might establish specific jurisdiction, including, for example, communications with retailers or distributors, targeting of retailers and distributors, etc. – that had other than an exclusive license. The specific discovery sought by Petzila will be fully explained in the Motion for Reconsideration.

2.**Documents Produced by Defendant Contradict Specific Denials Asserted By Defendant and Its CEO**

As reflected in the following table, Anser's production of documents in June and July, 2014 contradict or show to be misleading numerous specific denials proffered by Anser and its CEO prior to the May 20th Order.

| | Specific Denial by Anser | Newly Produced Evidence |
|---|---|---|
| 1 | Anser "had not directed any advertising specifically toward California residents or companies." Dkt. No. 14-5, ¶11 (Lavin Decl.).<br><br>The Lavin Declaration is cited for support in Dkt. No. 21. "To support its Motion [to Dismiss], Anser also filed the declaration of Lisa Lavin, Anser's CEO (Dkt. No. 14-5). Ms. Lavin's declaration confirmed the limited nature of Anser's contacts with the state." Dkt. No. 21 at 1 ("Anser | REDACTED.[2] Gikkas Decl., ¶9, Exh. E (AIL000258). REDACTED. Gikkas Decl., ¶10, Exh. F (AIL000032).<br><br>REDACTED. Gikkas Decl., ¶11, Exh. G (AIL000462 (e-mail request noting attachment of language Anser intended to send to the retailers)[3]); *see also* Gikkas Decl., ¶12, Exh. H (AIL000457-458 (email), AIL000443 (list of Tuffy's retail stores, including REDACTED)); Gikkas Decl., ¶13, Exh. I (AIL000284-286 (REDACTED; Gikkas Decl., ¶14, Exh. J (AIL000260 (envelope labels)).<br><br>REDACTED. Gikkas Decl., ¶15, Exh. K (AIL000469-470).[4] |

[2] Anser has not yet produced these communications in response to Petzila's document requests. If granted leave to move for reconsideration, Petzila will request sufficient relief in the proposed order that Anser understands such documents are responsive and should be produced. If the Court does not grant leave for Petzila to move for reconsideration, Petzila will move to compel production of documents such as these, which it believes are responsive to its document requests and the Court's May 20th Order.

[3] Despite requests from Petzila to provide these attachments with the intended language to be sent to Tuffy's retailers, Anser has not produced those attachments.

[4] Anser has produced the attachments, but not any cover e-mails or letters if such documents existed.

| | Specific Denial by Anser | Newly Produced Evidence |
|---|---|---|
| | Opposition"). | |
| 2 | Anser "did not enter into any contracts or license agreements with any California companies [beyond PayPal]" Dkt. No. 14-5, ¶11 (Lavin Decl.).<br><br>Anser "did not have any distribution of retail agreements" Dkt. No. 14-5, ¶13 (Lavin Decl.).<br><br>Anser "did not have any retail agreements by March 2014." Dkt. No. 14-5, ¶16 (Lavin Decl.).<br><br>"[N]or did [Anser] have any agreements that provided a third-party with a license to the '152 patent" Dkt. No. 14-5, ¶13 (Lavin Decl.).<br><br>"Anser denied that it had retail or distribution agreement [sic] when Petzilla filed this lawsuit, or that it specifically targeted California residents or companies at the Nevada trade show." Dkt. No. 21 at 6 (Anser Opposition (citing Dkt. No. 14 at 2-7)). | Anser admits to 22 pre-orders from California residents, but refused to acknowledge its retail agreements.<br><br>REDACTED. Gikkas Decl., ¶16, Exh. L (AIL000444).<br><br>Anser's website directs the retailer to a "create retailer account page," and has a form to complete including a check box for confirming that the retailer has agreed to the "Terms and Conditions," available through the website by hyperlink on a page called "Standard PetChatz Resale Terms & Conditions." Gikkas Decl., ¶ 17, Exh. M (Sec. 1, Applicable Contract Provisions). These Resale Terms & Conditions provide that it is the "entire agreement" between the parties," and "THIS AGREEMENT SHALL APPLY UNLESS BUYER HAS A SEPARATE WRITTEN AGREEMENT WITH SELLER THAT SPECIFICALLY STATES THAT SUCH WRITTEN AGREEMENT REPLACES THIS AGREEMENT." *Id.*[5] The Agreement has nine separate paragraphs, with subparagraphs and includes such clauses as applicable contract provisions, limitations on warranties, limitations on remedies, choice of law, assignment and severability. *Id.*<br><br>REDACTED. Gikkas Decl., ¶ 10, Exh. F (AIL000032).<br><br>As a matter of law, retail agreements concerning patented products are licenses to use, offer for sale, or sell the product, whether stated explicitly or impliedly. *See, e.g.*, *Genetic Implant Systems, Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997). |
| 3 | An agreement between Anser and its distributor contained "no exclusive rights granted to Tuffy's relating to the '152 | REDACTED. Gikkas Decl., ¶ 20, Exh. P (AIL000265-83, at AIL000266 (sections 1.3(b) and (f))).<br><br>Anser has claimed the exclusive right to the use of pet treats |

[5] In response to a discovery deficiency letter from Petzila, on July 8, 2014 Anser admitted that it has retail *accounts* (Gikkas Decl., ¶ 18, Exh. N at 2 (July 8, 2011 letter)) and that it approved these accounts with confirming e-mails for at least 30 of the 40 retailers found in its "web account activation mechanism" for it CRM software program. Gikkas Decl., ¶ 19, Exh. O at 2 (July 11, 2014 letter). However, Anser continues to deny that it has any *agreements* that it executes with its retailer. *Id.*

| | Specific Denial by Anser | Newly Produced Evidence |
|---|---|---|
| | patent or the PetChatz product," which it later explained as "[t]he only exclusivity related to Tuffy's right to sell its pet treats, which are not covered by the '152 patent." Dkt. No. 14-5, ¶¶13-14 (Lavin Decl.). | with the PetChatz through dependent claim 11 of the U.S. Pat. No. 7,878,152 ("the '152 patent") ("The method of claim 8 further comprising dispensing food to the animal."), where independent claim 8 claimed the method of providing a communications device comprising "a food dispenser." The '152 patent; col. 6, ls. 6-7; col. 5, l. 33 (Dkt. No. 12-3).[6]<br><br>REDACTED. Gikkas Decl., ¶ 20, Exh. P. *See, e.g.*, *Core-Vent Corp.*, 123 F.3d at 1459. |
| | "Moreover, Anser engaged in no patent enforcement or licensing activities in California beyond its discussions with Petzilla." Dkt. No. 21 at 1 (Anser Opposition). | REDACTED. Gikkas Decl., ¶ 20, Exh. P, section 5.2(a-d) (AIL000271). REDACTED. Gikkas Decl., ¶ 20, Exh. P, section 5.4 (AIL000272).<br><br>REDACTED. Gikkas Decl., ¶ 15, Exh. K (AIL000469 and AIL000470).<br><br>REDACTED. Gikkas Decl., ¶ 12, Exh. H (AIL000443 (list of Tuffy's retail stores, REDACTED)). |
| 4 | "Tuffy's did not receive any revenues from Anser's sale of the PetChatz devices ...." Dkt. No. 14-5, ¶14 (Lavin Decl.). | REDACTED. Gikkas Decl., ¶ 20, Exh. P, Sections 1.3(b) and (f) (AIL000265-83, at AIL000266, AIL000271).<br><br>REDACTED (Gikkas Decl., ¶12, Exh. H (AIL000443 (list of Tuffy's retail stores, REDACTED)), and has obtained pre-orders from some California retailers (Gikkas Decl., ¶ 22, Exh. R (AIL000257)), which would come with REDACTED. Gikkas Decl., ¶ 15, Exh. K (AIL000470).<br><br>REDACTED (Gikkas Decl., ¶12, Exh. H (AIL000443 (REDACTED), and REDACTED (Gikkas Decl., ¶ 22, Exh. R (AIL000257)), REDACTED. Gikkas Decl., ¶ 15, Exh. K (AIL000470).<br><br>Thus, Anser would owe Tuffy's revenues for the sale of each PetChatz or PetChatz Treatz if made through these retailers, distributors or brokers. |
| 5 | "PetChatz was not available in *stores*" and "[t]he *launch* of | At least one document produced by Anser suggests that it made sales (not just pre-market sales) of PetChatz products |

[6] Anser has also claimed exclusive right to the treats dispensed by the PetChatz through *apparatus* claim 6 of U.S. Patent No. 8,201,522, a continuation of the '152 patent ("the '522 patent"). Gikkas Decl., ¶ 21, Exh. Q ("[t]he apparatus of claim 5 further comprising a plurality of treats disposed with the treat reservoir," where dependent claim 5 claimed "a treat reservoir"). See Dkt. 12-7.

| | Specific Denial by Anser | Newly Produced Evidence |
|---|---|---|
| | PetChatz has been pushed back, likely until June or July 2014." Dkt. No. 14-5, ¶16 (Lavin Decl.)(emphasis added). | during REDACTED. Gikkas Decl., ¶ 23, Exh. S (AIL000264). REDACTED. *Id.*<br><br>At the least, the Lavin Declaration was misleading because it did not address the availability of the PetChatz product over e-commerce or the Internet – REDACTED (noted above). |
| 6 | "From Anser's founding in February 2011 until March 24, 2014 ... Anser received 22 pre-orders for its PetChatz product through its website from California residents. It did not sell any products through distributors or retailers. The 22 pre-orders totaled less than $6,000 in revenue." Dkt. No. 14-5, ¶8 (Lavin Decl.).<br><br>"Between February 2011 and March 2014 . . . Anser opened a PayPal account and generated less than $6,000 in revenue from 22 pre-orders received from California residents through Anser's website." Dkt. No. 21 at 1 (Anser Opposition). | At the very least, this statement is misleading because it suggests that where there were 22 pre-orders from California residents, which resulted in revenue of $6,000, there were no orders, no sales and no revenue from distributors or retailers in California. REDACTED.[7] Gikkas Decl., ¶ 22, Exh. R (AIL000257).<br><br>REDACTED. Gikkas Decl., ¶ 15, Exh. K (AIL000469 and AIL000470). |

### C. Plaintiff Did not Know Such Facts Despite the Exercise of Reasonable Diligence and Acted Diligently In Raising This Motion for Leave

Plaintiff had no access to the documents produced by Anser until more than a month after the Court's May 20, 2014 Order. Gikkas Decl., ¶ 4; ¶ 5, Exh. C; ¶ 7, Exh. D (June 24th production, July 8th & July 11th letters). While Plaintiff had access to Anser's website including its "Terms and Conditions" page for retailers, this page was not relevant until Anser produced documents demonstrating that it had retailers and distributors as well as a "web account activation mechanism" that presumably permits the retailer to click on the "Terms and Conditions." Likewise, while

---

[7] The document suggests that some of the orders from California retail shops were subsequently cancelled.

Plaintiff had access to the '152 patent prior to the Order and knew about claim 11 relating to pet food, Anser had not produced (or attached to the Lavin Declaration) that agreement between Anser and Tuffy's demonstrating that Anser had exclusively licensed Tuffy's with respect to pet food (trademarked as PetChatz Treatz) used in the PetChatz product.

Plaintiff identified these issues to Anser in correspondence (Gikkas Decl., ¶¶ 5, 7; Exhs. C, D), and the parties met and conferred with respect to this motion on July 15, 2014. Gikkas Decl., ¶ 24, Exh. T.

## III. CONCLUSION

Anser's production of document have established that specific material denials in its briefing to the Court and the declaration of its CEO were incorrect and misleading. Because Plaintiff could not know these specific denials were incorrect until Anser produced these documents, and because the Court may have relied on these denials to limit jurisdictional discovery, Plaintiff believes it should be granted leave to move for reconsideration under Local Rule 7-9. Finally, as noted in the Introduction, Anser has also resisted providing discovery requested by the document requests, which Petzila will explain in the Motion for Reconsideration, if an Order will grant leave to file a motion, instead of filing a separate motion to compel. Petzila respectfully requests that the Court allow briefing to show the Court why reconsideration of its Order is needed.

Dated: July 22, 2014

Respectfully submitted,

THE GIKKAS LAW FIRM

By: /s/ Nicolas S. Gikkas
NICOLAS S. GIKKAS
Attorneys for Plaintiff
PETZILLA, INC. d/b/a PETZILA