# **EXHIBIT C**

# 𝒢
# GIKKAS LAW FIRM

Nicolas S. Gikkas, Esq.
+1 (650) 617-3419 office
+1 (650) 618-2600 fax
nsg@gikkaslaw.com
www.gikkaslaw.com

530 Lytton Avenue
2nd Floor
Palo Alto, CA 94301

July 1, 2014

**VIA E-MAIL**

Mr. Grant Fairbairn, Esq.
Fredrikson & Byron, P.A.
200 South Sixth Street, Suite 400
Minneapolis, MN 55402

     Re:    *Petzilla, Inc. v. Anser Innovation LLC.*
              Case No. 14-cv-1354-EMC

Dear Grant:

    I write regarding certain deficiencies in the document production of Anser Innovation LLC ("Anser") in the above-referenced matter.

    As Anser is fully aware, it has certain disclosure obligations under Rule 26 of the Federal Rules of Civil Procedure and the Court's Order of May 20, 2014. On June 6, 2014, Plaintiff submitted its First Set of Requests for Production of Documents to Anser. Anser responded on June 17th, and produced documents on June 24th. Based on a review of your client's total production of fewer than 300 pages, it appears as though Anser's production remains deficient, at least as identified below.

- **Sales and Marketing Materials**: Anser represented to the Court that in the same month it notified Plaintiff (a California company) about the '152 patent and suggested the possibility of a patent license (July 2013), that Anser attended the SuperZoo National Show, but that it "did not target California residents or companies" or advertise differently toward them. Upon review of Anser's production to date, it appears as though Anser has not produced any of the marketing or advertising material that it used at, in conjunction with, or in response to the SuperZoo National Show – or any other trade show, such as the Global Pet Expo. Please indicate whether Anser considers its production in response to Plaintiff's Request for Production No. 1 – to which Anser indicated it "will produce" documents – to be complete. If not, please provide a date certain by which Anser will complete this production. If such material no longer exists, please indicate when and how it was destroyed.
- **Retail Sales**: Anser represented to the Court that it had "22 pre-orders" for its PetChatz product through its website from "California residents." Although some of the documents produced by Anser may substantiate a few of these "California residents,"

Mr. Grant Fairbairn, Esq.
July 1, 2014
Page 2 of 4

    Anser's production to date falls short of substantiating the larger number, let alone provide information about each of these "California residents." For Example, AIL000257 shows retail orders (not pre-orders) of 20 units total (not just California) before March 24, 2014. Presumably information substantiating Anser's representation to the Court of 22 pre-orders from California residents exist somewhere in a larger list or database that Anser has not yet chosen to share with Plaintiff. Thus, please indicate whether Anser considers this production in response to Plaintiff's Request for Production No. 1 to be complete, or provide a date certain by which Anser will complete this production.

- Sales in 2013: In opposing jurisdiction, Anser represented to the Court that its "launch of PetChatz has been pushed back, likely until June or July 2014." However, review of Anser's document production to date suggests that it had sales (not just Pre-Market sales) of PetChatz products during two months of 2013, including the sale of 20 units through E-commerce to consumers. See AIL000264. It therefore appears that Anser has failed to produce sufficient documents identifying those specific sales in California. Given the apparent incongruity, please confirm that Anser has produced all documents responsive to Plaintiff's related requests, including Request for Production Nos. 3-4, or provide a date certain by which Anser will complete this production.

- Distribution / Retail Agreements: Although Anser's production to date suggests that there have been at least 40 distribution and/or retail accounts established prior to March 24, 2014 (see, e.g. AIL000032), each presumably following the acceptance of Anser's online resale terms and conditions agreement. This number of agreements does not appear to align with the far fewer quantity of account request and approval documents for distributers / retailers that Anser has produced to date, or its representations to the Court. Again, please indicate whether Anser's considered its production in this matter to be complete, or provide a date certain by which Anser will complete this production.

- Licenses to the '152 Patent: Anser indicated to the Court that it did not "have any agreements that provided a third-party with a license to the '152 patent …." As noted immediately above, it appears that Anser has entered into agreements that give (explicitly or implicitly) to third-parties distributors or retailers the right to use, offer to sell, or sell Anser's PetChatz product. Thus, please confirm whether or not Anser considers its production to date to be complete, whether it is withholding any documents on the basis of a position that there are agreements but that they do not provide a third-party license to the '152 patent, or provide a date certain by which Anser will complete this production.

- Tuffy's Pet Foods, Inc.: Plaintiff's review of Anser's production appears to contain very few documents responsive to Request for Production Nos. 5-6 (related to Tuffy's Pet Foods, Inc.). It appears unlikely, subject to an appropriately functioning document retention policy, that the handful of documents Anser has produced includes all documents (including for example e-mails and draft and final agreements) between it and the exclusive supplier of a component product discussing, referring to or relating to distribution or retail sales. By way of just one example, it does not appear that Anser has produced the marketing materials mailed to Tuffy's 410 retailers in February 2014. See, e.g., AIL000284. Plaintiff also notes that its Request for Production of Documents

Mr. Grant Fairbairn, Esq.
July 1, 2014
Page 3 of 4

includes a request for drafts of such agreements or licenses. However, Anser does not appear to have produced any such drafts, including but not limited to drafts of the Tuffy's Pet Food agreement. Please either confirm that Anser has no further surviving responsive documents, or provide a date certain by which Anser will complete this production.

As to the Tuffy's related documents Anser did produce, they suggest that Anser's production remains incomplete. For example, AIL000287-90 shows that Anser's Director of Customer Service & Inside Sales indicated to a number of recipients (presumed employees of KLN Family Brands, which includes Tuffy's) including Jeanne Wilkey (California resident and Regional Manager for Tuffy's Pet Foods), that Anser had received from them "the contact info for stores in your areas" and "names of the retail partners that you provided me." *See, e.g.*, AIL000288. Neither of those documents, which appear to target certain retail geographies including California, appear to be in the production provided by Anser on June 24, 2014. Other documents indicate possible PetChatz business or communication between Anser and Tuffy's employees in California in addition to Ms. Wilkey, including Robert Merolla and Sheila Kennebeck. Please confirm that Anser has completed its collection and production of responsive jurisdiction-related discovery, or provide a date certain by which Answer will provide this discovery.

- E-mails and other communications: Upon review of Anser's production, it appears as though Anser has failed to produce more than a handful of non-form communications between, for example, Ms. Lavin, Anser's CEO, and Ms. Jeurissen, Anser's Director of Customer Service and & Inside Sales. It appears unlikely, subject to an appropriately functioning document retention policy, that Anser has in its possession, custody or control so few documents responsive to many of Plaintiff's requests, including Request Nos. 4-8, 13, and 16-17. Please either confirm that Anser has no further surviving responsive documents such as communications or even handwritten notes between its employees and/or executives, or provide a date certain by which Anser will complete this production.
- Marketing Plans and Sales Forecasts: Upon review of Anser's production, it appears as though Anser has failed to produce any more than a few marketing plans and sales forecasts. Again, it appears unlikely, subject to an appropriately functioning document retention policy, that this production could include so few draft or final documents responsive to Request Nos. 16-17. Please either confirm that Anser has no further surviving responsive documents, or provide a date certain by which Anser will complete this production.
- Communications with the Board of Directors: Plaintiff's review of Anser's production did not identify any documents relating to discussions with Anser's board of directors concerning distributors or retailers. Please indicate whether Anser has documents responsive to Request for Production No. 18, and if so, provide a date certain by which Anser will complete this production.
- Document Preservation / Destruction: Other than indicating that "beyond preserving documents for this lawsuit, it does not have a formal document retention policy," Anser

Mr. Grant Fairbairn, Esq.
July 1, 2014
Page 4 of 4

has not indicated whether or not it will agree to produce documents reflecting its preservation of documents related to this lawsuit. Plaintiff's review of Anser's production has not been able to identify any such responsive documents, while many categories of documents appear to be missing. Please indicate whether Anser has documents responsive to Request for Production No. 19, whether it is withholding such documents, and if so provide the basis for such withholding. Otherwise, provide a date certain by which Anser will complete this production.

Plaintiff further notes that a significant percentage of Anser's production has been produced from what appears to be a CRM tool (SMB Suite) in such a way as to obscure or remove the dates on which those communications take place. *See, e.g.*, AIL000032-35. Please reproduce all such documents in a format that correctly includes such information and any other information that has been removed. Moreover, Anser's appear to have removed many of the attachments from these documents, making Plaintiff's complete and effective review of these documents impossible. *See, e.g.*, AIL000070 (image001.png - image007.png), AIL000091 (same), AIL000094 (same), AIL000114 (same) and AIL000051 (image0001.jpg).

As noted above, a number of the documents produced by Anser to date appear to be inconsistent with the Declaration of its CEO, Ms. Lavin, in Support of its Motion to Dismiss for Lack of Personal Jurisdiction (*see, e.g.*, §§ 13, 16), repeated in Anser's Motion, and then cited by the Court (*see* Order, §II(B)). In sending this letter, Plaintiff does not waive any rights it may have to additional relevant documents to which it might be entitled under the Federal Rules of Civil Procedure, the Local Rules or any other order or ruling that governs discovery in this case. Nor does Plaintiff waive any rights it may have to take other actions or seek other relief as may be appropriate given Anser's discovery conduct.

Finally, Plaintiff notes that the agreement to take the deposition of Anser's CEO on July 17, 2014 was based in part on production of relevant documents sufficiently prior to that date to permit reasonable and effective review. Had the production been appropriate and complete, this would not be a problem. Plaintiff is willing to work with Anser to maintain the current schedule. However, if Anser cannot address and resolve the issues addressed in this letter and produce the outstanding discovery by July 10, 2014 (seven calendar days / five business days prior to the July 17th deposition), Plaintiff requests that Anser provide alternative dates when Ms. Lavin will be available for her deposition following completion of the outstanding jurisdictional discovery. Hopefully the parties will be able to resolve these discovery issues at hand without imposing on the Court.

Sincerely,

Nicolas S. Gikkas