# **EXHIBIT D**

# 𝒢
# GIKKAS LAW FIRM

Nicolas S. Gikkas, Esq.  
+1 (650) 617-3419 office  
+1 (650) 618-2600 fax  
nsg@gikkaslaw.com

530 Lytton Avenue  
2nd Floor  
Palo Alto, CA 94301

July 9, 2014

**VIA E-MAIL**

Mr. Grant Fairbairn  
Fredrikson & Byron, P.A.  
200 South Sixth Street, Suite 4000  
Minneapolis, MN 55402

Re: *Petzilla, Inc. v. Anser Innovation LLC*, Case No. 14-cv-1354-EMC

Dear Grant:

I write regarding the above-referenced matter in response to Defendant Anser Innovation LLC's July 8, 2014 letter regarding the incompleteness of its two document productions.

As an initial matter, Anser's suggestion that the document requests improperly "stretched" permissible discovery is nothing more than artificial, especially when Anser itself noted in the same letter that substantive Document Requests Nos. 1-18 were each expressly limited to those "'related to distribution and/or retail SALES' or used another similar limitation." More importantly, just because a document is a sales or marketing document, a marketing mailer, plan or forecast, or a pre-order from a California resident does not make the document non-responsive or outside the limits of the discovery ordered by the Court on May 20, 2014 (Order, Dkt. No. 28). For example, the marketing materials requested by Plaintiff may evidence (i) the nature of the license arrangement(s) such as the one(s) between Anser and Tuffy's/KLN, (ii) subsequent modifications to such agreements, (iii) the nature or functioning of the agreement as an exclusive distributor or retailer arrangement, or (iv) the manners in which Anser is doing business in California. Likewise, the origination of a pre-order from a California resident or retailer, or the way Anser responds to such a pre-order may clarify these retail or distribution arrangements. Plaintiff notes that it appears from Anser's second production (on July 8th), that the marketing mailer sent by Anser in February 2014 (AIL000444) targeted a number of retail establishments – 26 in California, including 7 in the N.D. of California (AIL000443) – beseeching them to "set up your retail account NOW." Plaintiff also notes that the marketing mailers indicate that there are attached "sell sheets," but that even after two productions, Anser has not produced these as attachments or stand-alone documents. Furthermore, the discovery shows that Anser has executed retail agreements with at least 18 other California companies through SuperZoo and social media, but these agreements have not been produced (AIL000001.xlsx). And, significantly, Anser has produced what appear to be a large number of retailers approved through its website (AIL000034-256), but no details (*e.g.*, location) are disclosed, no retailer agreements are produced, and no internal attachments are produced. It thus remains unclear whether or not Anser is withholding discovery responsive to the document requests based on an inappropriately narrow reading of the Court's May 20th Order.

Mr. Grant Fairbairn
July 9, 2014
Page 2 of 3

      As Plaintiff noted in its July 1st letter, the documents produced by Anser on June 24th also appear to differ significantly from representations made by Anser and its CEO (Dkt. No. 14-5) on key issues that underlie the issue of jurisdiction, and that may have formed the basis for the Court's May 20th Order. As just one example, as reflected in the documents Anser produced on June 24th and as are further explained in the July 1st letter, Anser has at least implicitly licensed Tuffy's to use, offer to sell, or sell a product allegedly protected by the '152 patent through a distribution or retail agreement (AIL000265-283). Despite representations to the Court to the contrary, Anser made no attempt to deny or explain these inconsistencies in its July 8th letter. As a second example, Plaintiff noted that Anser represented to the Court that its launch of PetChatz was delayed until June or July 2014, but then on June 24th Anser produced a document that evidenced sales (not just pre-market sales) of PetChatz products during *two months* of 2013 (AIL000264). Rather than attempt to explain this apparent misleading representation to the Court – one that may have influenced the Court to order discovery directed in particular to retail and distribution channels – instead Anser produced on July 8th minutes of a *January 14, 2013* Board of Governors (a document it claims is nonresponsive) that references still earlier "initial sales of Units in the Company's pending private placement ...." (AIL000295). As such, if Anser believes that Plaintiff's document requests are too broad and/or Anser is withholding the collection or production of documents specifically justified in Plaintiff's July 1st letter, on a basis that they are related to such things as (i) actual sales and sales channels, (ii) the directing of advertising towards California residents or companies, or (iii) to distribution or retail agreements or patent licenses (explicit or implied), then please indicate that you are doing so, so that Plaintiff can raise the matter directly with the Court.

      Despite protestations that it "believes that it fully complied with its obligations" and that it's prior "production was [instead] over-inclusive," it is clear from Anser's July 8th production that this was not the case. As just one of many examples, on July 1st, Plaintiff identified that a document in Anser's June 24th production regarding the "Rollout Timeline" mailing to 410 Tuffy retailers (AIL000284) identified responsive documents that Anser failed to produce. In response, on July 8th, Anser produced AIL000443, entitled "Summary of Leads from all reps – used to make labels.xlsx," which was last modified by "Connie" [Jeurissen, Anser's Director of Customer Service & Inside Sales] on Monday, April 7, 2014. This document identifies leads sourced *only* from Tuffy's, including Tuffy's California residents and regional managers. This document is directly responsive to a number of Plaintiff's Document Requests, including but not limited to Nos. 5 and 13 ("documents related to distribution and/or retail sales with Tuffy's Pet Foods, Inc." and "sales representatives, retailers, distributors, and/or resellers for each of the Covered Products"), and clearly falls within the Court's May 20th Order. However, even as to this particular document discovery remains incomplete. Anser does not appear to have produced the document Tuffy's sent to Anser, which presumably provided the list of retailers some time presumably shortly prior to February 14, 2014. As such, Plaintiff seeks specific confirmation and not just blanket, self-serving protestations, that each of the areas noted in Plaintiff's July 1st letter have been fully searched and produced, such that Anser cannot contest jurisdiction based on a limited self-selected subset of relevant documents, and then rely on subsequent responsive productions to refute or establish other facts.

Mr. Grant Fairbairn
July 9, 2014
Page 3 of 3

      Two other concerns of a global nature are Anser's evasive response regarding its lack of a formal document retention policy and what appears to be yet another improperly limited search or production of responsive documents. For example, Anser has stated that it "has no document establishing the lack of a formal document retention policy," but evades indicating whether it has issued any policy for the retention of documents such as those that may be responsive to this litigation. If it is withholding such document(s), Anser has also evaded providing its basis for withholding them. This is deeply concerning not only because Anser sent a notice of patent infringement related to this lawsuit approximately a year ago, but also because Anser now states that (i) it is retaining responsive documents merely in the manner "as they are maintained in the ordinary course of business" and (ii) some of its attachments or e-mail communications were not produced because Anser's "web account activation mechanism was [not] in place" for its customer relations [CRM] software program when some of the distribution and retail accounts were set up. Thus, not only has Anser raised spoliation concerns directly related to jurisdictional issues now subject to discovery, but it appears that Anser is refusing to provide discovery beyond the limits of its CRM software program – such as agreements, e-mails or other correspondence with retailers or distributors that may have preceded or been created outside that software tool. Anser raises more questions than it answers, such as: has Anser searched through e-mail records outside the tool, and to the extent communications were made using personal e-mail, were those accounts also checked for responsive documents. It is not enough for Anser's attorneys to assert that "Anser is [now] aware of its obligation to preserve documents during the course of this litigation and has a litigation hold in place." As such, please confirm prior to July 11 that all such locations (including those outside the CRM software program) have been searched, and that all responsive documents have been produced. If Anser is withholding documents responsive to its preservation of relevant documents on the basis of privilege, please provide a log showing which documents (date, title, author, recipient) and the basis for the withholding.

      At this juncture it appears that there remains significant distance between the parties as to jurisdictional discovery obligations and the sufficiency of the production to date. Because Ms. Lavin's deposition is currently scheduled for July 17, it does not appear likely that Anser is working towards resolving these issues in sufficient time for Plaintiff to conduct a meaningful review of any outstanding documents. Thus, please cure these deficiencies by July 11 or represent by that date that Anser has produced all remaining responsive, non-privileged documents requested by Plaintiff, above and in its July 1st letter, that remain in Anser's possession, custody or control. Otherwise, we request that you provide the discovery when it is available and offer dates for Ms. Lavin's deposition thereafter.

                                                                        Sincerely,

                                                                       Nicolas S. Gikkas