UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETZILLA, INC., | No. C-14-1354 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| ANSER INNOVATION LLC, | |
| Defendant. | **(Docket No. 34)** |
| _____/ | |

Plaintiff Petzilla, Inc., d/b/a Petzila ("Petzilla") has sued Anser Innovation LLC ("Anser") seeking declaratory judgment. At issue is Anser's patent, United States Patent No. 7,878,152 ('152). Petzilla requests that the Court enter a declaration that Petzilla does not infringe the '152 patent and that the '152 patent is invalid. Currently pending before the Court is Anser's Rule 12(b)(2) motion to dismiss. Anser argues that it lacks sufficient contacts with the forum for the Court to have personal jurisdiction over it. *See* Docket No. 34 ("Motion"). As explained herein, and for the reasons stated on the record at the hearing, the Court **GRANTS** Anser's motion to dismiss.

## I.   BACKGROUND

Petzilla and Anser are both start-up companies that have developed devices that allow remote interaction with pets. Petzilla is headquartered in San Jose. *See* FAC ¶ 2. Anser is located in Burnsville, Minnesota. *See* Docket No. 14-5 (Lavin Decl. at ¶ 2). Anser owns, by assignment, the '152 patent, entitled "Domestic Animal Telephone," which is employed in a "greet & treat" device called "PetChatz." PetChatz allows pet owners to video-chat their pets and release an edible treat. *Id.* at ¶ 3. PetChatz is in the "process" of being commercialized. *Id.* After receiving a cease and

desist letter from Anser, as to Petzilla's "PetziConnect" product, Petzilla filed a lawsuit against Anser before Judge Davila. Petzilla voluntarily dismissed that suit in March of 2014. Shortly after dismissing its first lawsuit, Petzilla filed this lawsuit, repeating its prior allegations, and later amending its complaint to add certain jurisdictional allegations: a televised interview of Anser's CEO (Lisa Lavin), a contract with PayPal, and a relationship with a retailer or distributor in California that Petzilla alleges amounts to an implied license. FAC at ¶¶ 12-14. Anser contends it is not subject to personal jurisdiction in this district.

A.  Contacts

In the FAC, Petzilla contends that Anser is subject to personal jurisdiction because Anser "offers its products for sale" in this District "and/or has transacted business in this District." The FAC goes on to discuss alleged offers for sale or transactions of business, for example: offers to sell to California residents at a trade show, offers to sell to California residents through Anser's website and online presence, an interview discussing PetChatz that was broadcast on television and posted on the internet, and one or more contracts with PayPal. FAC at ¶¶ 9-13. Petzilla discusses the facts leading up to this lawsuit, including an exchange of letters regarding potential licensing, which culminated in a cease and desist letter, and which was followed by a press release concerning Anser's acquisition of certain patents, including the patent-in-suit. *Id.* at ¶¶ 19-22. Petzilla avers that "Defendant has appointed one or more distributors and/or retailers doing business in California to distribute and/or sell its PetChatz product thus surrendering under an implied license the right to exclude." *Id.* at ¶ 14.

Anser's motion to dismiss was filed in April of 2014. *See* Docket No. 14. The Court then granted Petzilla's request for jurisdictional discovery regarding Anser's relationships with distributors and retailers. *See* Docket No. 28. This discovery allowed Petzilla to explore its allegation that Anser surrendered its right to exclude by appointing a distributor and/or retailer to distribute and/or sell PetChatz in California. Anser then re-noticed its motion to dismiss.

In opposing the pending motion, for the most part Petzilla does not challenge the assertions of Ms. Lavin in her declaration. The Court granted Petzilla's request for an extension of time to file its opposition to provide Petzilla with the opportunity to depose Ms. Lavin and to test any purported

inconsistencies in Ms. Lavin's declaration.  *See* Docket No. 40.  It appears that Petzilla declined to take Ms. Lavin's declaration notwithstanding its purported need for further discovery.  *See* Docket No. 47 ("Reply") at 2.  Petzilla served 20 document requests regarding jurisdiction, received responsive documents, and bypassed two opportunities to depose Ms. Lavin prior to opposing this motion.  Fairbairn Decl. ¶¶ 6, 13.  In the end, Petzilla offered no new facts in support of personal jurisdiction other than an agreement between Anser and Tuffy's Pet Foods, Inc. ("Tuffy's"), another Minnesota company.

B.     Tuffy's Agreement

Petzilla argues that Tuffy's is a distributor that promotes and sells Anser's "patented products" in California, where Tuffy's regularly does business.  Opp. at 12-13.  Petzilla argues that the agreement between Anser and Tuffy's shows "that Anser made an undertaking to surrender at least part of the bundle of exclusive patent rights represented by the '152 patent" and therefore the Tuffy's Agreement suffices for specific jurisdiction in California.  *Id.* at 12.

Under the agreement between Anser and Tuffy's ("Tuffy's Agreement"), Anser retains primary responsibility for sales of the PetChatz device through distributors, brokers, and retailers that are either selected by Anser or identified as "sales leads" by Tuffy's.  Tuffy's Agreement at ¶ 2.1.  Tuffy's does not receive any revenues from sales of the Petchatz device.  *Id.* at ¶ 2.4.  Instead, Tuffy's is responsible for producing co-branded Treat Packs, including the treats for those Treat Packs, for use with the PetChatz device or "on-the-go."  *Id.* at ¶¶ 3.1; 3.2.  Anser designs the Treat Pack and Treat Pack dispenser for the device, and owns any intellectual property associated with the Treat Packs.  *Id.* at ¶ 3.1.  ▌

▌

▌ *Id.* at ¶¶ 5.1(d); 5.2(b).  ▌

▌ *Id.* at ¶ 5.4.  Anser has primary responsibility over developing a marketing plan for the Device and Treat Packs, although Tuffy's will "support marketing efforts of the Device and co-branded Treat Packs."  *Id.* at ¶¶ 4.1; 4.2.

Under the Tuffy's Agreement, Anser confers to Tuffy's a "royalty free, nonexclusive limited license" to use Anser's "copyrights, trade names, trademarks, service marks and other similar

3

1    intellectual property rights" solely in connection with Tuffy's production and sale of the Treat
2    Packs. *Id.* at ¶ 7.3. This nonexclusive license makes sense, because the Tuffy's Agreement
3    contemplates co-branded Treat Packs. Anser also agrees to indemnify Tuffy's from certain claims
4    relating to PetChatz, including third party claims that PetChatz infringes other patents. *Id.* at 9.1.

5    Anser had not shipped any PetChatz devices at the time of the filing of the Complaint. Anser
6    accepted pre-orders, but the launch of the product was pushed back "likely until June or July 2014."
7    Lavin Decl. ¶¶ 8; 16. *See also* Docket 12-2 (Ellenburg Decl., Ex. 1) ("[PetChatz] is currently
8    available for pre-order only[;] [t]he approximate delivery date is early 2014.").

## II. DISCUSSION

### A. Legal Standard

Under Rule 12(b)(2), a defendant may move for dismissal based on lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The jurisdiction issue is "intimately involved with the substance of the patent laws," and therefore Federal Circuit law applies. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.,* 566 F.3d 1012, 1016 (Fed. Cir. 2009) (quoting *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.,* 552 F.3d 1324, 1328 (Fed. Cir. 2008)).

Determining whether personal jurisdiction exists requires a "two-step inquiry." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1358 (Fed. Cir. 1998). The first step is to determine whether the defendant is amenable to process. *Id.* If that is satisfied, the court "ensures that 'maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' that are embodied in the Due Process Clause." *Id.* Here, "because California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1360 (Fed. Cir. 2001).

In the due process inquiry, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985). When considering "minimum contacts" the court looks to the "number and nature of a defendant's contacts with the forum." *Red Wing,* 148 F.3d at 1359. Where a claim "arises out of or relates to those contacts" personal jurisdiction is proper "even if those contacts are

'isolated and sporadic.'" *Id.* (citing *Burger King,* 471 U.S. at 472-73). This is specific jurisdiction. *Id.* By contrast, contacts unrelated to the cause of action can give rise to general jurisdiction. *Id.* General jurisdiction imposes a "higher burden." *Avocent,* 552 F.3d at 1330. General jurisdiction requires finding that the defendant's contacts with the forum are "continuous and systematic general business contacts." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16 (1984). The Supreme Court has recently clarified that it is an "exceptional case" where general jurisdiction is available outside of a business's state of incorporation or principal place of business. *Daimler AG v. Bauman,* 134 S. Ct. 746, 761 n.19 (2014). For general jurisdiction to apply, contacts must be so "constant and pervasive" that the company is "essentially at home." *Id.* at 751.

The Federal Circuit has added patent-specific nuance to these familiar principles. In a declaratory patent action, because "the nature of the claim . . . is to clear the air of infringement charges," the claim "neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum." *Avocent,* 552 F.3d at 1332 (citations omitted). Instead, the claim "arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit." *Id.* Thus, the "relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities." *Id.* (citations omitted). Under these principles, "the defendant patentee's own commercialization activity" in the forum does not support specific personal jurisdiction. *Avocent,* 552 F.3d at 1335-36 (finding no personal jurisdiction where patentee's products were available for sale within the forum at retail stores and through the internet, because "we hold that such sales do not constitute such 'other activities' as will support a claim of specific personal jurisdiction"). On the other hand, "exclusive licensing agreements and other undertakings that impose *enforcement* obligations on a patentee or its licensee reflect the kind of 'other activities' that support specific personal jurisdiction in a declaratory judgment action." *Id.* (emphasis added). More specifically, the Federal Circuit has "consistently required the defendant to have engaged in 'other activities' that relate to the *enforcement* or the

5

*defense of the validity* of the relevant patents." *Id.* at 1334 (emphasis in original); *accord Radio Sys. Corp. v. Accession, Inc.,* 638 F.3d 785, 789 (Fed. Cir. 2011) ("[O]nly those activities of the patentee that relate to the enforcement or defense of the patent can give rise to specific personal jurisdiction for such an action.").

B.  General Jurisdiction

Petzilla appears to agree that general jurisdiction does not extend to Anser. Petzilla does not make any argument in favor of general jurisdiction in its opposition. Moreover, Anser's motion and supporting evidence reflect that general jurisdiction would not apply. The trade show referenced in the FAC took place in Nevada, and Anser did not specifically target California residents or companies at the trade show. Lavin Decl. at ¶ 4. Anser's website is generally available on the Internet and does not target California residents in any way. Lavin Decl. at ¶ 11. Anser's television interview was not directed at California. Lavin Decl. at ¶ 10. Anser attests that its only interaction with PayPal is its agreement for a standard internet merchant account. Lavin Decl. at ¶ 9.

More broadly, Anser did not own or maintain an office in California, owned no property in California, had no contracts with California companies (other than its account with PayPal), was not licensed to do business in California, did not pay taxes in California, had no employees or representatives in California (or who traveled to California), did not have a registered agent for service in California, attended no conferences or trade shows in California, had no California contact information, had no California bank accounts, did not litigate in California (other than its special appearances in the suits brought by Petzilla), and did not specifically target California residents with its advertising. *See* Lavin Decl. at ¶ 11.

Thus, the record reflects that Anser had only "isolated and sporadic" contacts of the type insufficient to support general jurisdiction. *Campbell Pet Co. v. Miale,* 542 F.3d 879, 883-84 (Fed. Cir. 2008) (quoting *Helicopteros,* 466 U.S. 408 at 416 (1984)).

C.  Specific Jurisdiction

Petzilla argues that specific jurisdiction is warranted based on the cease and desist correspondence along with the Tuffy's Agreement. Opp. at 7-8. The parties do not dispute that Anser sent Petzilla cease and desist correspondence, *see* Mot. at 3, and thus Petzilla's focus is on

whether "Anser entered into an exclusive license agreement or other undertaking that imposes enforcement obligations with a party regularly doing business in the forum." *Id.*

### 1. Cease and Desist Correspondence

The cease and desist correspondence from Anser to Petzilla is not enough. In *Red Wing,* 148 F.3d 1355 at 1360, the Federal Circuit held, "even though cease-and-desist letters alone are often substantially related to the cause of action (thus providing minimum contacts), the minimum requirements inherent in the concept of fair play and substantial justice defeat the reasonableness of jurisdiction." Thus, "[f]or the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum and related to the cause of action besides the letters threatening an infringement suit." *Silent Drive, Inc. v. Strong Indus., Inc.,* 326 F.3d 1194, 1202 (Fed. Cir. 2003) (citation omitted). The parties appear to agree that the cease and desist correspondence does not establish specific jurisdiction. *See* Motion at 19; Opp. at 7.

### 2. Tuffy's Agreement

The parties further agree that the Tuffy's Agreement is not a license of the patent-in-suit. Instead, Petzilla argues that the Tuffy's Agreement "has aspects" of a patent license. Opp. at 10-11. To attempt to connect the '152 patent to the Tuffy's Agreement, Petzilla alleges that the Tuffy's Agreement relates to the treats, and not just the treat pack. More specifically, Petzilla contends that the treats "*are* covered by the '152 patent, not only in the specification, but also in the patent claims." Opp. at 10 (emphasis in original). Petzilla's support for its argument is that claim 11 of the '152 patent includes "the food that is dispensed." *Id.* Petzilla relies on "claim differentiation" to argue that dependent claim 11 ("dispensing food to the animal") is distinguishable from independent claim 8. Petzilla argues that because food, *i.e.,* the treats, is *mentioned* in dependent claim 11, the treats are therefore an essential element to practicing the patented invention. *Id.* Petzilla refers to these treats as "a patented element," and argues that "Tuffy's is clearly the exclusive distributor of 'a patented element.'" *Id.*

However, the '152 patent does not teach pet food or its packaging. While the '152 patent contemplates a food dispenser (one embodiment of which is depicted in Figure 3 of the patent's drawings), the "Treat Pack" is not a food dispenser. Indeed, the Tuffy's Agreement distinguishes

7

between the two. *See, e.g.,* Tuffy's Agreement ¶ 3.1. The Tuffy's Agreement does not confer upon Tuffy any rights to the Treat Pack dispenser. Instead, Tuffy's merely receives rights with respect to selling and manufacturing a co-branded pack of treats.

Petzilla's reliance on Claim 11 is misplaced. Claim 11 is a dependent claim. It therefore incorporates by reference all the limitations of Claim 8, the independent claim on which it depends. *See* 35 U.S.C. § 112 (e) ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers."). The Treat Pack and the treats do not read on the claim limitations of Claim 8 or any other independent claim in the '152 patent. Claim 8 sets forth "[a] method for communicating with an animal" comprising, among other things, "the communications device initiating an outgoing call to a person." Manufacture or sale of the treats or treat pack would not infringe the '152 patent nor require a license of the '152 patent. *See TechSearch, L.L.C. v. Intel Corp.,* 286 F.3d 1360, 1371 (Fed. Cir. 2002) ("To establish literal infringement, all of the elements of the claim . . . must be present in the accused system."). Moreover, Claim 11's reference to "the food that is dispensed" does not render any food capable of being dispensed (such as a biscuit or a bone cookie) an element of the patent.[1]

The analogy to an exclusive license of the patent is inapplicable to the case at bar. In *Core-Vent,* the patentee "agreed not to appoint 'any other person, firm or entity to sell or otherwise distribute' the products, which includes dental implants covered by the [patent-in-suit]." *Core-Vent,* 123 F.3d at 1458-59. By contrast, the Tuffy's Agreement confers no exclusive rights over the PetChatz product; it only covers a form of treats usable by PetChatz. Anser maintains primary responsibility for selling the PetChatz devices that are covered by the '152 patent. Tuffy's Agreement at ¶ 1.2. And while Anser may use sales leads from Tuffy's, Anser "will offer and sell

---

[1] The Court is not persuaded by the website printout presented by Petzilla's counsel at the hearing. Even assuming that the Tuffy's treats were especially made for PetChatz, and that the device did not function as well without the Tuffy's treats, the patent claims do not require that the device use Tuffy's treats. On the contrary, the specification of the '152 patent describes the food dispensed as a "treat such as a food pellet, a little bone, [or] a bone cookie." '152 Patent 2:22-25. Similarly, it appears that Petzilla's device can also accommodate a variety of treats. Petzilla notes that the "accused PetziConnect product admittedly uses and dispenses treats and has a treat dispenser." The enclosed screenshot of PetziConnect lists under "product features" that the treat is a "treat of your pet's choice." Opp. at 9.

1  the Device through multiple channels, including . . . distributors, brokers, and retailers *selected by*
2  *Anser*." Tuffy's Agreement at ¶ 2.1 (emphasis added).

3      Additionally, relevant case law has focused on whether or not an exclusive licensing
4  agreement or its equivalent "requires the defendant-licensor, and grants the licensee the right, to
5  litigate infringement claims." *Breckenridge Pharm., Inc. v. Metabolite Labs.,* Inc., 444 F.3d 1356,
6  1366 (Fed. Cir. 2006). The Tuffy's Agreement confers no rights to Tuffy's to enforce the '152
7  patent or to require Anser to enforce the '152 patent. Nor does the Tuffy's Agreement confer any
8  similar rights concerning the defense of the validity of the '152 patent.

9      This matters, because the crux of the jurisdictional inquiry in patent declaratory relief cases
10 is whether the Tuffy's Agreement relates to the *enforcement* or *defense* of the '152 patent. *See*
11 *Avocent,* 552 F.3d at 1334. It does not. Petzilla argues that the Tuffy's Agreement imposes
12 enforcement obligations on Tuffy's, because ████████████████████████████ Anser
13 retains control over Tuffy's manufacturing and marketing of the Treat Packs, and Anser retains the
14 right to approve distributor and retail pricing for the Treat Packs. These obligations, however, do
15 not relate to the *enforcement* or *defense* of the patent-in-suit. *Cf. Autogenomics,* 566 F.3d at 1021
16 (Fed. Cir. 2009) (finding that patentee's agreement with OEM supplier relating to the field in issue
17 did not evidence or support a reasonable inference of an agreement "analogous to a grant of a patent
18 license"); *Red Wing,* 148 F.3d at 1361-62 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444
19 U.S. 286, 299 (1980)) ("[Patentee's] receipt of royalty income from its licensees for sales made in
20 [forum] is . . . irrelevant[,] [because] 'financial benefits accruing to the defendant from a collateral
21 relation to the forum State will not support jurisdiction if they do not stem from a constitutionally
22 cognizable contact with that State.'").

23     Petzilla further points to a provision in the Tuffy's Agreement concerning nonexclusive
24 licenses of non-patent intellectual property. Under the Tuffy's Agreement, Anser confers to Tuffy's
25 a "royalty free, nonexclusive limited license" to use Anser's "copyrights, trade names, trademarks,
26 service marks and other similar intellectual property rights" solely in connection with Tuffy's
27 production and sale of the Treat Packs. *Id.* at ¶ 7.3. Otherwise, the agreement does not "give
28 Tuffy's any propriety or ownership interest of any kind in the intellectual property of Anser,"

9

including the "[u]tility and design patents and patent applications relating to the [PetChatz] Device." *Id.* at ¶ 7.1. This limited, non-exclusive license makes sense; it pertains to the co-branding of the Treat Packs, not any patent rights. Moreover, even if some patent property rights were included under ¶ 7.3, a *nonexclusive* license does not pass muster. *See Red Wing*, 148 F.3d at 1357-58 (finding no specific jurisdiction when defendant had 34 non-exclusive licensees selling products in forum).

In short, the treats and Treat Pack are not "covered" by the '152 patent, the limited non-patent licenses contemplated by the Tuffy's Agreement are nonexclusive, Anser retains its intellectual property rights under the Tuffy's Agreement, and the Tuffy's Agreement does not confer upon or oblige Tuffy or Anser to enforce or defend enforcement of the '152 Patent.

### III. CONCLUSION

General jurisdiction does not apply. As to specific jurisdiction, the cease and desist correspondence and the Tuffy's Agreement do not create specific jurisdiction. Anser's motion to dismiss for lack of personal jurisdiction is **GRANTED**.

This order disposes of Docket No. 34. The Clerk shall enter judgment and close the case file.

The unredacted version of this order shall be filed under seal and shall be served via U.S. Mail on all counsel listed on the attached Certificate of Service.

IT IS SO ORDERED.

Dated: September 23, 2014

_____
EDWARD M. CHEN
United States District Judge